UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALBERTA JENKINS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 10-5058 |
| v. | : | MEMORANDUM OPINION |
| | | & ORDER |
| KNOWLEDGE LEARNING CORPORATION | : | |
| and KINDERCARE LEARNING CENTERS, | | |
| INC. d/b/a DELRAN KINDERCARE, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's motion for summary judgment.
Oral argument on the motion was heard on May 15, 2012, and the record of that
proceeding is incorporated here. For the reasons expressed on the record, and those
outlined below, Defendant's motion will be granted in part and denied in part.

## Background

Plaintiff Alberta Jenkins is a former employee of Defendant Knowledge Learning
Corporation. On September 30, 2012, she filed the Complaint in this Court against her
former employer asserting claims pursuant to the Americans with Disabilities Act
("ADA"), 42 U.S.C. § 12101, and the Age Discrimination in Employment Act ("ADEA"),
29 U.S.C. § 621. Plaintiff originally alleged that she was suspended, subjected to a
hostile work environment, and terminated because of her known and/or perceived
health problems related to her back. (Count One.) She also asserted a retaliation claim
under the ADA because she was terminated despite Defendants' knowledge of her prior
back surgery and her need for an accommodation of not sitting on a floor. (Count Two.)
In addition, she claimed Defendants failed to accommodate her disability by, among
other things, allowing her to sit on a chair rather than on the floor. (Count Three.)

In her brief in opposition to Defendants' summary judgment motion, Plaintiff clarified that she is only pursuing the ADA claim of wrongful termination in retaliation for requesting a reasonable accommodation, asserted in the Second Count of the Complaint. (Pl. Br., p. 4 n.1.)  Additionally, Plaintiff claims  that she was subjected to a hostile work environment and terminated because of her age, which was sixty-four years old at the time she was terminated.  (Count Four.)  Finally, Plaintiff alleges that she was terminated in retaliation for complaining about alleged age discrimination.  (Count Five.)

Defendant Knowledge Learning Corporation is the parent company of Defendant KinderCare Learning Centers, Inc., which operates a children's daycare facility known as Delran KinderCare.  Plaintiff was hired by Delran KinderCare ("Defendant") on or about July 3, 1986 to work as a staff member in the infant room.  In April of 1999, Plaintiff underwent back surgery due to ongoing back problems.  Plaintiff alleges that as the result of her back surgery, sitting on the floor was difficult for her, so she requested to avoid sitting directly on the floor at work.  Nonetheless, she contends that the Defendant insisted that Plaintiff sit on the floor with the children.  Plaintiff also alleges that she was selectively and pretextually disciplined.  In October of 2007, Plaintiff filed an EEOC charge against Defendants, complaining of disability and age discrimination.  On January 15, 2008, Plaintiff was terminated after she was allegedly caught sleeping on the job in the infant room while three infants in her care were left unsupervised.

Defendants have moved for summary judgment on Plaintiff's claims, and Plaintiff has opposed the motion.  After oral argument on the motion, the parties asked the Court to stay the action so they could pursue alternative dispute resolution, which was not successful in resolving the case.  As such, the motion has been reinstated.

## Discussion

### A.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.;

3

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to

withstand a properly supported motion for summary judgment, the nonmoving party

must identify specific facts and affirmative evidence that contradict those offered by the

moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon

mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v.

Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting

Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot

be genuinely disputed by showing that "an adverse party cannot produce admissible

evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); accord

Fed. R. Civ. P. 56(c)(2).

        In deciding the merits of a party's motion for summary judgment, the court's role

is not to evaluate the evidence and decide the truth of the matter, but to determine

whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple

BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## B.  Employment Discrimination

        The task of the Court is not to second-guess employment decisions, but is instead

to determine whether the employment decisions were motivated by an illegal

discriminatory purpose.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-

4

27 (3d Cir. 1992).  Analysis of Plaintiff's claims is governed by <u>McDonnell Douglas Corp.</u> <u>v. Green</u>, 411 U.S. 792 (1973).  Under <u>McDonnell Douglas</u>, an employee must first establish by a preponderance of the evidence a prima facie claim of discrimination by showing  (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the employer treated more favorably those not in the protected class or, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position.  <u>Sarullo v. United States Postal Service</u>, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted).  The prima facie test is a flexible one which must be tailored to fit the specific context in which it is applied.  <u>Id.</u> at 797-98.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  <u>Fuentes v.</u> <u>Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).  However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'"  <u>Iadimarco v.</u> <u>Runyon</u>, 190 F.3d 151, 166 (3d Cir. 1999).

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that

the employer's explanation is pretextual." <u>Fuentes</u>, 32 F.3d at 763.  A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence.  <u>Ezold</u>, 983 F.2d at 523.  One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor.  <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494-95 (3d Cir. 1995).  On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken."  <u>Fuentes</u>, 32 F.3d at 765.  Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," <u>id.</u> (citing <u>Ezold</u>, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" <u>id.</u> (citing <u>Josey v. John R. Hollingsworth Corp.</u>, 996 F.2d 632, 638 (3d Cir. 1993)).

A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext.  <u>See, e.g.</u>, <u>Valdes v. Union City Bd. Of Ed.</u>, 186 Fed. Appx. 319, 323 (3d Cir. 2006).  An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate.  <u>See</u> <u>Sarmiento v. Montclair State Univ.</u>, 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs).  That is, a plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment.  <u>Langley v. Merck & Co.</u>, 186 Fed. Appx. 258, 261 (3d Cir. 2006).

6

1. Age discrimination

Plaintiff alleges she was subjected to a hostile work environment and terminated because of her age. (Count Four.) In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must prove that: (1) the plaintiff belongs to a protected class--over age 40; (2) the plaintiff was qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the position was filled by someone sufficiently younger to permit an inference of age discrimination. See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 331 (3d Cir. 2000); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

Plaintiff concedes that she is claiming only the termination as adverse action. (Pl. Br., p. 5.) Defendant has argued that, assuming Plaintiff can make out a prima facie case of age discrimination, Plaintiff cannot show that the legitimate, non-discriminatory reasons for her termination were pretextual.

A January 14, 2008 Employee Conference Memorandum indicates that Plaintiff was terminated for "sleeping during company time; lack of child supervision" in "violation of company policy or procedure" when Amanda Dawicki, Center Director, and Amanda Scalise, Assistant Director, found her sleeping in the infant classroom at approximately 10:30 a.m. (Young Aff., Ex. 3; Pl. Stmt. of Facts, Ex. O.[1] See also Dawicki Dep., p. 48, 51; Scalise Dep., p. 40, 104.) Thus, the defense contends that Plaintiff was terminated for a legitimate, non-discriminatory reason – because she was asleep with

---

[1]The Memorandum also listed an October 12, 2007 Performance Improvement Plan and Employee Conference Memorandum citing Plaintiff for Carelessness in Caring for Children and a September 28, 2007 Employee Conference Memorandum citing Inappropriate Disciplinary Action. (Id.)

three infants in her care, in violation of the Defendant's zero-tolerance policy.  (See Ale Dep., p. 26, 32; Dawicki Dep., p. 53, 83; Scalise Dep., p. 100-101, 111-112.)

Plaintiff argues that Defendant's explanation is implausible; she rebuts the "zero tolerance policy" as not having been applied equally to younger employees.[2]  (The Policy states "Lack of supervision will result in termination, unless there are significant extenuating circumstances.")  In addition, Plaintiff's written comments on the January 14, 2008 Employee Conference Memorandum were:

> I feel that this situation was not handled properly.  I feel that I am being discriminated against because of my age and disability.  There are other life threatening occurrences that people are not being reprimanded or written up for.  Including management.  Leaving the building unattended, smoking and cell phones outside instead of managing the supervision of the building in case of . . . .

(Id.)  She contends that following her May 2007 20th anniversary celebration with the company, her direct supervisors, including Center Director Amanda Dawicki and Assistant Director Amanda Scalise, had made repeated comments to her about retirement, and when she planned on collecting social security, stating "isn't retirement looking good," or "don't you want to retire?"  (Jenkins Dep., p. 15-16, 39, 258, 260.)  Dawicki and Scalise denied making these statements.  (Dawicki Dep., p. 62; Scalise Dep., p. 97-99.)

---

[2]Plaintiff has submitted documentation to show that Janet McCargo, younger than Plaintiff, was "merely" written up for leaving "a classroom full of children unattended" in violation of the "NO TOLERANCE policy."  (Pl. Stmt. of Facts, Ex. Q. Quotes are as originally written on McCargo's January 30, 2004 Corrective Action Form.)  Lauren Zeuner, another employee younger than Plaintiff, received a only a written warning when she left a toddler alone in a classroom while she took the other children outside to play.  (Pl. Stmt. of Facts, Ex. J.)  Defendant counters that none of the comparators were found sleeping on the job, so the acts of those individuals were not of comparable seriousness to Plaintiff's infraction.  Additionally, Defendant points out that nine other individuals, most younger than Plaintiff, were terminated by Defendant because they were found sleeping on the job between April of 2007 through 2010.  Def. Answers to Interrogs., # 6.

Moreover, Plaintiff denies she was asleep.[3]  (Jenkins Dep., p. 176, 189.)

Defendant urges court to discount plaintiff's deposition testimony as "so incredible that reasonable minds could not believe it." (Def. Br., p. 3-4.)  It is due to the inconsistencies between the two accounts, leading to the need for a determination of credibility, that the motion for summary judgment must be denied.  That is, the Court cannot decide whether Defendant's proffered reason for Plaintiff's termination is unworthy of credence because there are genuine issues of material fact in the record.  A reasonable jury, however, could decide that Defendant's proffered reason for Plaintiff's termination is unworthy of credence.

Next, assuming a hostile work environment claim may be brought under the ADEA, see Whitesell v. Dobson Commc'n, 353 Fed. App'x 715, 717 (3d Cir. 2009), to establish a prima facie case, a plaintiff must present evidence that: 1) she suffered intentional discrimination because of age; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected her; 4) the discrimination would detrimentally affect a reasonable person in the same position; and 5) the existence of respondeat superior.  Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), overruled in part on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  "To determine whether the comments were severe or pervasive, we evaluate 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'"  Whitesell, 353 Fed. App'x at 717

---

[3]Regarding the defense argument that Plaintiff failed to deny that she was sleeping on the Employee Conference Memorandum, the Court cannot find, as a matter of law, that such is an admission.

(quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-88 (1998)).  That is, in order to establish a hostile work environment, the workplace must be "'permeated with discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21 (1993) (quoting <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65–67 (1986)).

Plaintiff argues that from May 2007 through January 15, 2008, her hours were changed, she was accused of force-feeding a child and placed on a two week suspension, she was subjected to written discipline and placed on a performance action plan for putting a used pull-up on a child and securing it with tape, she was repeatedly asked if she was going to retire, and she was left in a classroom "out of ratio."  The Court finds that the age-related conduct in record was not sufficiently severe or pervasive to support the hostile work environment claim.  <u>See</u> <u>Whitesell</u>, 353 Fed. App'x at 717 (finding a few age-related remarks were not severe and pervasive because the comments were neither physically threatening nor humiliating, and the plaintiff did not show how the comments affected her work performance).

2. Retaliation

Plaintiff alleges that she was terminated in retaliation for complaining about alleged age discrimination.  (Count Five.)  To establish a prima facie case of retaliation, an ADEA plaintiff "must show: (1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the adverse action."  <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 701 (3d Cir. 1995).

In addition, Plaintiff claims she was wrongfully terminated in retaliation for requesting an accommodation under the ADA.  (Count Two.)  To establish a prima facie retaliation claim under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500–01 (3d Cir. 1997).  "A plaintiff need not be 'disabled' under the ADA to prevail on a retaliation claim."  Stouch v. Twp. of Irvington, 354 Fed. App'x 660, 667 (3d Cir. 2009).

The record shows that in October of 2007, Plaintiff filed an EEOC charge.  (Young Aff., Ex. 12.)  Defendant characterizes this as a general vague complaint of unfair treatment that does not constitute protected activity, (Def. Br., p. 15), and additionally argues that there is no causal connection between the EEOC charge and Plaintiff's termination because there is no evidence that any of Defendant's employees know of the charge until after Plaintiff's termination, (Def. Br., p. 16).  See Ale Dep., p. 97-98; Scalise Dep., p. 98-99.

First, the Court notes that the EEOC charge specifically references age.  (Young Aff., Ex. 12.)  In addition, with a clean record of discipline and no documented or noted performance concerns before her twentieth anniversary with the Defendant, the Court is troubled by the fact that Plaintiff was terminated within three months of her questioning whether disciplinary action by Ale and Scalise was due to her age, followed by an EEOC charge.  See Jenkins Dep., p. 132; Scalise Dep., p. 78.  Fasold v. Justice, 409 F.3d 178, 190 (3d Cir. 2005) ("[W]hen only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn.").

There is nothing in the record, however, to support even an inference that Plaintiff was terminated in retaliation for requesting an accommodation of not sitting on the floor.  Although Plaintiff argues that she repeatedly made requests directly to management regarding floor time, it is clear that she did not have to sit on the floor to perform her job duties.  (Jenkins Dep., p. 133-34; Ale Dep., p. 53-54.)  The record reflects that, after back surgery, Plaintiff was cleared to return to work without any restrictions on August 2, 1999.  (Young Aff., Ex. 4.)  The Court finds no protected activity with regard to an actual or perceived disability and, even assuming that she made a request for accommodation, no causal connection between such request and her termination.

Finally, Defendant seeks to limit Plaintiff's damages to ten months of back pay because she planned to retire by December 2008.  Again, genuine issues of material fact in the record will cause the Court to deny summary judgment on this issue and allow for damages to be determined at the time of trial.

## Conclusion

For these reasons, as well as those articulated on the record May 15, 2012,

IT IS ORDERED on this 3rd day of July, 2013 that Defendants' motion for summary judgment [27] is hereby GRANTED IN PART and DENIED IN PART.

Summary judgment is granted as to Counts One and Three, as Plaintiff has conceded these claims.  Summary judgment is also granted on Count Two, wrongful termination in violation of the ADA in retaliation for requesting an accommodation.

Summary judgment is denied on Counts Four and Five, wrongful termination due to age discrimination and in retaliation for complaining about age discrimination, violations of the ADEA.

 /s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ  
U.S.D.J.